IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**RICARDO FELIX GARCIA,**

    Petitioner,

v.                                                                                            Civil Action No. **3:13CV680**

**LESLIE FLEMING,**

    Respondent.

## MEMORANDUM OPINION

Ricardo Felix Garcia, a Virginia state prisoner proceeding *pro se* and *in forma pauperis*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition") challenging his conviction in the Circuit Court for the County of Stafford, Virginia ("Circuit Court"). In his § 2254 Petition, Garcia argues entitlement to relief based upon the following grounds:[1]

    Claim One:     Counsel rendered ineffective assistance by failing to investigate the purported terminal illness of a prosecution witness.

    Claim Two:     Counsel rendered ineffective assistance by failing to secure the testimony of a material witness for the defense case.

    Claim Three:     The Commonwealth engaged in prosecutorial misconduct when it "knowingly and intentionally used . . . perjured testimony . . . ." (§ 2254 Pet. 9.)

Respondent moves to dismiss the § 2254 Petition. Despite providing Garcia with appropriate *Roseboro* notice,[2] (ECF No. 13.) Garcia failed to respond. The matter is ripe for disposition.

---

[1] The Court corrects the punctuation in the quotations from Garcia's submissions.

[2] *See Roseboro v. Garrison*, 528 F.3d 309 (4th Cir. 1975).

## I. PROCEDURAL HISTORY

Following a jury trial, the Circuit Court convicted Garcia of five counts each of forcible sodomy, object penetration, aggravated sexual battery, and indecent liberties–custodial and sentenced him to a total of 210 years of incarceration. *Commonwealth v. Garcia*, Nos. CR08-1291-00 through CR08-08-1291-19, at 1-3 (Va. Cir. Ct. Oct. 26, 2010). Garcia appealed this decision, and the Court of Appeals of Virginia denied the petition for appeal. *Garcia v. Commonwealth*, No. 2344-10-4, at 1 (Va. Ct. App. July 27, 2011). The Supreme Court of Virginia refused Garcia's subsequent petition for appeal. *Garcia v. Commonwealth*, No. 111955, at 1 (Va. Mar. 21, 2012).

Garcia filed a petition for a writ of habeas corpus in the Supreme Court of Virginia raising all three claims in the instant § 2254 Petition. *See* Petition for Writ of Habeas Corpus at 3-8, *Garcia v. Warden of the Keen Mtn. Corr. Ctr.*, No. 130392 (Va. filed Mar. 3, 2013). Finding that Garcia's claims lacked merit, the Supreme Court dismissed his petition. *Garcia v. Warden of the Keen Mtn. Corr. Ctr.*, No. 130392, at 1-5 (Va. Sept. 4, 2013).

### II. THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may

not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### III. EVIDENCE OF GARCIA'S GUILT

Because a review of Garcia's claims requires an understanding of evidence presented at trial, the Court now summarizes the evidence of his guilt. The Court of Appeals summarized certain relevant testimony as follows:

> A.G., who was eleven at the time of appellant's trial, testified that during a period of two years, when she was seven to nine years old, appellant put his penis in her vagina, anus, and mouth, and put his tongue in her vagina. Appellant also penetrated her anus with his fingers and other objects. The first person A.G. told about the abuse was Erica Hickson, who was provided counseling services to A.G.'s family in 2008. A.G. did not report appellant's conduct earlier because he threatened to kill her. On cross-examination, the defense questioned A.G.'s credibility because of her delay in reporting the abuse.
> Over appellant's objection, Hickson testified that A.G. reported appellant had had her put cream on his genitals, had touched her buttocks, and tried to put his genitals in her mouth. Hickson relayed the victim's allegations to the Department of Social Services (DSS). On October 21, 2008, Detective John Hughes spoke to A.G. at her school after the police were contacted by DSS. Hughes testified that he questioned A.G. about the first and last times "something" had happened involving appellant. A.G. told Hughes that appellant had tried to put his penis into her "pee pee," used his mouth on her genitals, put his fingers in her vagina and her anus, and licked her chest. A.G. also described to Hughes the frequency that such acts occurred.

*Garcia v. Commonwealth*, No. 2344-10-4, at 6 (Va. Ct. App. July 27, 2011). A.G. told Hughes that beginning at the age of seven or eight until when she was nine, Garcia came to her room nearly every night, sometimes more than once a night, when her mother was at work. (June 17, 2010 Tr. 76–77.) A.G. explained with great detail that nearly every night, Garcia would rub lotion on her and put his penis into her anus. (June 17, 2010 Tr. 78–79.) Garcia also inserted inanimate objects such as a pencil, eraser and candle, into her anus. (June 17, 2010 Tr. 79.)

The victim's mother and Garcia's wife, C.G., testified that Garcia stayed home with the couple's three children while she worked both day and night shifts. (June 16, 2010 Tr. 177.) One day, in 2004 or 2005, when C.G. came home from work, she walked into the living room and "saw Mr. Garcia completely naked with a full erection and my daughter on top of [him] not clothed either." (June 16, 2010 Tr. 177–78, 195.) When C.G. asked Garcia what he was doing, Garcia threatened her to "get to [her] room" and "to keep [her] mouth shut if [she] knew what was best for [her]" and that "he would smack her around." (June 16, 2010 Tr. 178.) C.G. never reported the incident because "she was scared of [Garcia]" (June 16, 2010 Tr. 196, 248) who had a history of physical abusing C.G. and had threatened to kill her. (*See* June 16, 2010 Tr. 229–32, 239–42.)

C.G. also testified that Garcia wanted A.G., at the age of seven or eight, to "wear skin-tight pants, midriff shirts that showed her belly. He would always tell her that she looked sexy when she wore those things." (June 16, 2010 Tr. 180.) C.G. told Garcia that A.G. "was too young to wear those things." (June 16, 2010 Tr. 180.) C.G. testified that Garcia liked to bathe A.G. alone. (June 16, 2010 Tr. 181.) When both Garcia and C.G. were under the influence of drugs, Garcia admitted to C.G. that he engaged in sexual intercourse with A.G. (June 16, 2010

4

Tr. 181.) The following day when Garcia was no longer under the influence of drugs, Garcia denied his prior statements. (June 16, 2010 Tr. 181–82.)

Faith Shortell, a forensic nurse examiner at Mary Washington Hospital, interviewed and examined A.G. on October 24, 2008. (June 16, 2010 Tr. 320–21.) A.G. explained to Shortell that Garcia came into her room when her mother was not home, and put his penis in her face, or her mouth, or on her "pee pee," or would make her rub lotion on it. (June 16, 2010 Tr. 348.) In a spatial orientation demonstration, A.G. also indicated that Garcia would put his penis inside her vagina. (June 16, 2010 Tr. 349–51.) A.G. told Shortell that Garcia "put a gun to [her] neck twice and said if you ever tell anyone about this, I will kill you or your family." (June 16, 2010 Tr. 347 (quotation marks omitted).)

Jonathan Bagwell, a former pod-mate of Garcia's in the Rappahannock Regional Jail (June 17, 2010 Tr. 18) testified that Garcia told him that he and his wife were at odds about how A.G. dressed and that Garcia wanted her to dress more "adult like." (June 17, 2010 Tr. 21.) Garcia also asked Bagwell "in a theoretical kind of way that if had been tickling her and putting her hands down [A.G.'s] pants, would that be a crime." (June 17, 2010 Tr. 21–22.) Bagwell asked Garcia if he had put his hands down his daughter's pants and Garcia "indicated that had he been drinking and when drinking, anything was possible, and that it could have, in fact, happened." (June 17, 2010 Tr. 22.) Garcia also told Bagwell that "he had at various points put his hands down his daughter's pants" (June 17, 2010 Tr. 22), "he would do that while tickling her, that got him sexually aroused." (June 17, 2010 Tr. 67.) Prior to testifying, Bagwell averred that he had not taken any medications that would affect his ability to testify. (June 17, 2010 Tr. 14.)

## IV. INEFFECTIVE ASSISTANCE

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In Claim One, Garcia contends that trial counsel rendered ineffective assistance when he failed to investigate the purported terminal illness of the Commonwealth's witness, Jonathan Bagwell. (§ 2254 Pet. 6.) In summarizing[3] and ultimately rejecting this claim, the Supreme Court of Virginia explained:

> [P]etitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate whether the Commonwealth's key witness, Jonathan Bagwell, actually suffered from a terminal illness at the time of trial and counsel failed to investigate what effects the drugs Bagwell was allegedly taking to treat his illness had on his ability to testify. Petitioner contends that prior to trial Bagwell provided the prosecution with documentation which showed Bagwell suffered from Stage 3 colorectal cancer and was undergoing chemotherapy and radiation. At trial, the jury was informed of Bagwell's condition, Bagwell was allowed to testify from a wheelchair, and, at one point, Bagwell urinated on himself. Petitioner contends that, had counsel investigated the matter, counsel

---

[3] Garcia's claims in his state habeas petition and in the instant § 2254 Petition are essentially identical.

> would have discovered that Bagwell forged the document which alleged he had cancer, that Bagwell did not suffer from colorectal cancer, and that Bagwell did not need to be in a wheelchair to testify at trial. Petitioner contends Bagwell's lies "impacted every aspect of . . . petitioner's trial."
>
> The Court holds that [this claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner fails to proffer on what grounds counsel should have questioned and investigated Bagwell's medical issues given the lengths to which Bagwell went to fabricate his condition. Petitioner also fails to proffer any potential side effects from Bagwell's chemotherapy and radiation treatment that might have affected his ability to testify and warranted investigation by counsel. Petitioner also fails to proffer how counsel would have been able to discover any information about Bagwell's condition and medication in light of the privacy protections accorded to a person's medical history under the Health Insurance Portability and Accountability Act of 1996. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Garcia v. Warden of the Keen Mtn. Corr. Ctr.*, No. 130392, at 1–2 (Va. Sept. 4, 2013) (omission in original).

The Court discerns no unreasonable application of the law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). First, Garcia only contends that Bagwell lied about the extent of his illness, however, at no point alleges that Bagwell provided false testimony about Garcia's admissions that he inappropriately touched his daughter. Garcia also fails to proffer on what grounds counsel could have questioned Bagwell about his medications as Bagwell testified that he had been taken off any medication that might have affected his ability to testify two days before trial began. (*See* June 17, 2010 Tr. 14.) Second, in light of the compelling evidence of his guilt, Garcia fails to demonstrate any prejudice from counsel's purported errors. At most, Bagwell testified that Garcia had admitted to him that he placed his hands down the victim's pants. The jury also heard consistent testimony that Garcia had sexually abused the victim from the victim herself, Garcia's wife, a family counselor, a police investigator, and an examining nurse. Thus, Garcia fails to demonstrate that, but for

7

counsel's failure to question Bagwell about his illness, a jury would have found Garcia not guilty of the many counts. Because Garcia demonstrates neither deficiency of counsel nor resulting prejudice, Claim One will be DISMISSED.

In Claim Two, Garcia faults counsel for failing "to exercise due diligence in securing testimony of Dr. Patel, a material witness for the defense." (§ 2254 Pet. 7.) Garcia alleges that counsel failed to successfully argue for a continuance of the trial due to Dr. Patel's unavailability and that "Dr. Patel's testimony was material because he had recently treated the victim in this case." (*Id.* at 7–8; *id.* Attach. at 4.) In summarizing and rejecting this claim, the Supreme Court of Virginia made the following findings:

> At a pre-trial hearing on counsel's request for a continuance to secure Dr. Patel for trial, counsel proffered that Dr. Patel's examinations of the victim showed she suffered from auditory hallucinations, that Dr. Patel's diagnosis of the victim's reliability was "fair to poor," and that he diagnosed her as having "poor" insights and judgment. The court denied the request, finding counsel had failed to exercise due diligence to obtain Dr. Patel's presence at trial. Petitioner contends Dr. Patel's testimony would have impeached the victim's credibility.
> The Court holds that [this claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner appealed the trial court's denial of his continuance request and his appeal was denied. Furthermore, petitioner fails to provide an affidavit from Dr. Patel to show he would have testified as petitioner alleges. Additionally, the record, including the trial transcript, demonstrates that after the victim learned she would have to testify against petitioner, who is her father, she began having auditory and visual hallucination, including visions of her father chasing her with a knife, and that she indicated a desire to kill herself so she would not have to deal with her father. The victim received extensive treatment for her psychiatric problems, including hospitalization, counseling, and medication, and, at the time of trial, she had been released from treatment and only occasionally took medication to relieve her anxiety. The victim had not taken any medication prior to testifying. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Garcia*, No. 130392, at 1–2. The Court discerns no unreasonable application of the law or an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)–(2). Garcia fails to

8

demonstrate that, but for counsel's purported error in failing to ensure Dr. Patel testified at trial, a jury would have found Garcia not guilty. Garcia claims that Dr. Patel would have impeached the victim's testimony at trial because in December 2009 and January 2010, Dr. Patel "diagnosed the victim's reliability as fair to poor and had opined that her insight and judgment were poor." (§ 2254 Pet. Attach. B, at 1; *see* June 15, 2010 Tr. 52–53.) Garcia fails to proffer how Dr. Patel's assessment in December 2009 and January 2010 had any relevance at the time of trial in June 2010. Instead, the record demonstrates that, "[s]ince treatment in January 2010, Patel had released A.G. to return to school, and she no longer needed regular psychiatric treatment or medication." *Garcia v. Commonwealth*, No. 2344-10-4, at 2 (Va. Ct. App. July 27, 2011). Thus, Garcia fails to demonstrate that A.G. suffered from any illness that would cast doubt on her credibility at trial. The jury heard the testimony of the victim and found her credible.

Moreover, several witnesses testified about the victim's reports made to them in October 2008, more than a year before her treatment by Dr. Patel in January 2010. The testimony of the victim at trial and her earlier statements to a counselor, police investigator, and nurse were consistent. Because Garcia fails to demonstrate any prejudice from counsel's failure to secure Dr. Patel as a trial witness, Claim Two will be DISMISSED.

## V. PROSECUTORIAL MISCONDUCT

In Claim Three, Garcia claims that the Commonwealth engaged in prosecutorial misconduct when it "knowingly and intentionally used the perjured testimony of Jonathan Bagwell." (§ 2254 Pet. 9.) Garcia believes that "the witness wasn't ever sick and [the Commonwealth's Attorney] knew it" (§ 2554 Pet. Attach. C, at 2), yet she informed the jury that Bagwell suffered from cancer (*id.* at 1–2). Garcia claims that after his trial, the

Commonwealth's Attorney initiated prosecution against Bagwell for providing a false medical document stating that he had cancer. (*Id.*)

To prove a violation of due process based on false testimony, a petitioner must prove his conviction was "obtained through use of false evidence, known to be such by representatives of the State." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted); *see United States v. Tanner*, 61 F.3d 231, 236 (4th Cir. 1995) (requiring a defendant to prove "the prosecution knew or should have known at trial" that testimony was false in order to establish a due process violation (citing *Napue*, 360 U.S. at 269)).[4]

In finding Claim Three lacked merit, the Supreme Court of Virginia aptly observed that:

> Petitioner fails to show the prosecutor was aware of Bagwell's deceit either prior to or at trial. The record, including the trial transcript, notes from the Stafford County Sheriff's Office, and correspondence between the prosecutor and counsel, demonstrates that the police and the prosecutor only became aware of Bagwell's deceit nineteen months after petitioner's trial. *See Angelone v. Dabney*, 263 Va. 323, 326, 560 S.E.2d 253, 255 (2002) ("When a petitioner asserts that his conviction was obtained by the prosecution's knowing use of perjured testimony, the petitioner bears the burden of proving that the conviction was founded on perjured testimony, <u>and that the prosecution knowingly used that testimony to secure the conviction.</u>") (emphasis added).

*Garcia v. Warden of the Keen Mtn. Corr. Ctr.*, No. 130392, at 4 (Va. Sept. 4, 2013). Garcia fails to demonstrate that the Supreme Court of Virginia's conclusion is incorrect, much less unreasonable. *See* 28 U.S.C. § 2254(d)(1)–(2). While after trial, the Commonwealth learned that Bagwell falsified his illness or the extent of his illness, Garcia wholly fails to demonstrate that the prosecution knew or should have known Bagwell lied about his illness during trial. Prior to the trial, Bagwell provided police with a forged letter from an actual oncologist's office explaining the extent of his cancer and treatment, and had a woman represent herself as his caregiver to police, the Commonwealth, and his probation officer. Motion to Dismiss Ex. 6, at

---

[4] A due process violation may occur if the prosecution knowingly uses "false testimony [that] goes only to the credibility of the witness." *Napue*, 360 U.S. at 269.

1–2, *Garcia v. Warden of the Keen Mtn. Corr. Ctr.*, No. 1397901 (Va. filed Apr. 24, 2013); *see id.* Ex 8, at 185–186.[5] Garcia also alleges no facts that Bagwell falsely testified about Garcia's statements to Bagwell pertaining to his interaction with his daughter. Because Garcia fails to demonstrate the prosecution knowingly used false testimony, the Supreme Court of Virginia acted reasonably in rejecting this claim. Accordingly, Claim Three will be DISMISSED.

## VI. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 13) will be GRANTED. Garcia's claims will be DISMISSED and his § 2254 Petition will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[6]

An appropriate Final Order shall issue.

/s/ John A. Gibney, Jr.
United States District Judge

Date: 6/18/14
Richmond, Virginia

---

[5] The woman posing as Bagwell's caregiver gave a statement to police in 2012 that Bagwell would initially drive to Stafford County himself but would pull over and make her drive to the courthouse. Motion to Dismiss Ex. 8, at 185, *Garcia v. Warden of the Keen Mtn. Corr. Ctr.*, No. 130392 (Va. filed Apr. 24, 2013). At the courthouse, Bagwell removed his rented wheelchair out of the car and placed oxygen hoses up his nose. *Id.* at 185. After Bagwell testified, she drove to another location where Bagwell removed the oxygen tubes, got out of the wheelchair, and then Bagwell drove the remainder of the trip home. *Id.* The woman told police that Bagwell "did all of this because he wanted his probation to remain in Norfolk where he could see his kids, and not have to return back to Stafford, [and she stated] all this was a lie." *Id.* Bagwell also had her falsely state to a detective, who in turn, informed the Assistant Commonwealth's Attorney, that Bagwell had suffered a stroke and was in the hospital. *Id.* at 185–86.

[6] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Garcia fails to meet this standard.

11